**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER,** )<br>)<br>) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | Civil Action No. _____ |
| ) | |
| **DEPARTMENT OF JUSTICE,** ) | |
| ) | |
| Defendant. ) | |
| ————————————————————) | |

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65, plaintiff Electronic Privacy Information Center respectfully moves for entry of a preliminary injunction to enjoin defendant Department of Justice's unlawful attempts to impede plaintiff's efforts to obtain agency records concerning the Terrorist Screening Database and its use within Secure Flight, the passenger prescreening system under development by the Transportation Security Administration.  Plaintiff seeks an order requiring defendant to expedite the processing of plaintiff's Freedom of Information Act request for records concerning the Terrorist Screening Database and to complete the processing of plaintiff's request within 30 days.

The grounds for this motion are set forth in the accompanying memorandum of points and authorities.  Plaintiff asks that the Court schedule a hearing on this application for a preliminary injunction at the Court's earliest convenience.[1]

---

[1] In light of the upcoming holidays, plaintiff would consent to waiving the 20-day time frame for hearings on preliminary injunction motions set forth in Local Rule 65.1(d) and be prepared to appear in support of this motion sometime in January 2005.

Respectfully submitted,

_____

MARCIA HOFMANN
D.C. Bar No. 484136

DAVID L. SOBEL
D.C. Bar No. 360418

MARC ROTENBERG
D.C. Bar No. 422825

ELECTRONIC PRIVACY INFORMATION
     CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, DC 20009
(202) 483-1140

Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER,** | ) ) ) |
| Plaintiff, | ) ) |
| v. | )   Civil Action No. _____ |
| **DEPARTMENT OF JUSTICE,** | ) ) ) |
| Defendant. | ) ) |

_____ )

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION**

Plaintiff Electronic Privacy Information Center ("EPIC") respectfully submits this memorandum of points and authorities in support of its motion for a preliminary injunction.

**Preliminary Statement**

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the expedited processing and release of agency records concerning the maintenance of the Terrorist Screening Database by the Federal Bureau of Investigation ("FBI"), and the use of that database in Secure Flight, a new passenger prescreening system under development by the Transportation Security Administration ("TSA"). Defendant Department of Justice ("DOJ") has acknowledged that the requested information fits squarely within the narrow category for which Congress has mandated expedited processing and, on October 13, 2004, purported to grant EPIC's request for such expeditious treatment.   Nonetheless, in violation of the FOIA and defendant DOJ's own regulations, the FBI has failed to process plaintiff's request even within the 20-

working day time frame for processing a standard FOIA request not entitled to expedited treatment.  The FBI's failure to process plaintiff's request is substantively flawed.  Because time is at the essence of plaintiff's rights and the FBI's obligations, plaintiff seeks the Court's expedited consideration of this matter and entry of an order compelling defendant DOJ to process and disclose the requested records within 30 days.

### Statement of Facts

**A.  Aviation Security and the Government's Development of Passenger Prescreening Programs**

Following the terrorist attacks of September 11, 2001, the President signed the Aviation and Transportation Security Act ("ATSA"), Pub. L. No. 107-71.  The ATSA created the TSA within the Department of Transportation and, *inter alia*, transferred to TSA the duties and responsibilities set forth in Chapter 449 of Title 49, United States Code, relating to civil aviation security.  Those duties and responsibilities include "screening of all passengers."  49 U.S.C. § 44901 (2004).

On November 25, 2002, the President signed the Homeland Security Act ("HSA"), Pub. L. No. 107-296.  The HSA created the Department of Homeland Security ("DHS") and, *inter alia*, transferred the functions of TSA to DHS.  6 U.S.C. § 203 (2004).  As part of its responsibilities relating to the screening of airline passengers, TSA began developing in early 2002 the Computer Assisted Passenger Prescreening System ("CAPPS II").  Robert O'Harrow Jr*., Air Security Focusing on Flier Screening*, the Washington Post, Sept. 4, 2002, at A1.  In a press release titled "TSA's CAPPS II Gives Equal Weight to Privacy, Security," and issued on March 11, 2003, TSA described CAPPS II as "an enhanced system to confirm the identities of passengers and to identify foreign terrorists or persons with terrorist connections before they can board U.S.

aircraft." From the beginning of CAPPS II's development, controversy surrounded the

implications the system would have for personal privacy, and the issue received a great

deal of attention from the news media and Congress.[2] In July 2004, TSA abandoned its

plans to implement CAPPS II, largely due to privacy concerns. *See* Mimi Hall and

Barbara DeLollis, *Plan to Collect Flier Data Canceled*, USA Today, July 15, 2004, at

1A.

On September 24, 2004, TSA published a notice in the Federal Register

announcing its intent to test Secure Flight, a new passenger prescreening system. System

---

[2] *See, e.g.*, Byron Okada and Diane Smith, *Travelers Face New Screening at Airports*, Fort Worth Star Telegram, Dec. 1, 2002, at 1; Leslie Miller, *Feds Testing Air Passengers Check System*, Associated Press, Feb. 27, 2003; Joe Sharkey, *A Safer Sky or Welcome to Flight 1984?*, New York Times, March 11, 2003, at C9; Press Release, Office of Senator Ron Wyden, Wyden Wins Commerce Committee Approval to Require Oversight of CAPPS II Airline Passenger Screening System (Mar. 13, 2003); Editorial, *Safe Skies*, Washington Post, Mar. 21, 2003, at A12; Audrey Hudson, *Hill Assumes Oversight Role on Airline Screening*, Washington Times, May 10, 2003, at A02; Margie Boule, *"No-Fly List" Problems May Multiply With New System*, The Oregonian, June 19, 2003, at E01; Sara Kehaulani Goo, *TSA May Try to Force Airlines to Share Data*, Washington Post, Sept. 27, 2003, at A11; Jeffrey Leib, *Passengers Will Have to Give More Info*, Denver Post, Sept. 28, 2003, at A03; Alexandra Marks, *Passenger Tracking at Airports on Hold*, Christian Science Monitor, Oct. 21, 2003, at 02; Sean Holstege, *Air Security Grounded: Government Struggles to Launch Screening System*, Oakland Tribune (CA), Oct. 26, 2003; David Armstrong, *The Color of Safety*, San Francisco Chronicle, Nov. 6, 2003, at B1; Shaun Waterman, *U.S., EU Reach Passenger Data Deal*, United Press International, Dec. 16, 2003; Paul Marks, *Screening System Stirs Concerns of Misuse*, Hartford Courant, Jan. 17, 2004, at A1; Jon Hilkevitch, *GAO Report Critical of Profiling System for Airline Safety*, Chicago Tribune, Feb. 13, 2004, at C1; Press Release, Office of Senator Patrick Leahy, Reaction of Senator Leahy to GAO's Report on Flaws in the CAPPS II Program (Feb. 13, 2004); Anastasia Ustinova, *Airport Screen Plan Has Tough Day on the Hill*, Philadelphia Inquirer, Mar. 18, 2004, at A10; Editorial, *Airport Screening System More Minus Than Plus*, Atlanta Journal Constitution, Mar. 25, 2004, at 14A; Press Release, Senate Governmental Affairs Committee, Senators Collins, Lieberman Ask TSA: What Other Airlines Have Been Contacted and Asked for Passenger Information? (Apr. 14, 2004); Ricardo Alonso-Zaldivar, *Facing Privacy Questions About Privacy Issues, the Government Will Try to Redesign a Computer System to Identify Suspected Terrorists*, Los Angeles Times, July 17, 2004, at A20; Editorial, *Protecting Privacy*, Baltimore Sun, July 18, 2004, at 4C.

of Records Notice, Secure Flight Test Records, 69 Fed. Reg. 57345 (Sept. 24, 2004)

(attached to Declaration of Marcia Hofmann ("Hofmann Decl."), filed herewith, as

Exhibit 1).  The Washington Post has reported that the new program "still will rely on

key elements of the earlier, controversial program." Robert O'Harrow Jr., *Airport

Screening System Touted as Improvement*, Washington Post, Aug. 27, 2004, at E03.

TSA's Federal Register notice explained that

> Secure Flight will involve the comparison of information for domestic
> flights to names in the Terrorist Screening Database (TSDB) maintained
> by the Terrorist Screening Center (TSC), to include the expanded TSA
> No-Fly and Selectee Lists, in order to identify individuals known or
> reasonably suspected to be engaged in terrorist activity.

*Id*. at 57345.  The notice initiated a public comment period on the test phase of Secure

Flight, which ended on October 25, 2004.  *Id*. at 57345.

TSA continues to develop Secure Flight.  Last month, TSA ordered 72 airlines to

turn over a month's worth of passenger data to test the program.  Notice of Final Order

for Secure Flight Test Phase, 69 Fed. Reg. 65619, 65626 (Nov. 15, 2004).  In a Federal

Register notice published on November 15, 2004, TSA stated that it is "in the process of

preparing a notice of proposed rulemaking" to explain, among other things, why it has

exempted Secure Flight from the Privacy Act requirements that individuals be permitted

to access and correct personal information. *Id*. at 65621.  TSA will solicit public response

on this notice, which may be the last opportunity for public comment before the

government implements the program to screen tens of millions of airline passengers.  *Id*.

As such, the disclosure of information concerning the Terrorist Screening Database,

which constitutes a significant component of Secure Flight, must occur expeditiously if

the public is to have a meaningful opportunity to comment on this controversial initiative.

**B.  Plaintiff's FOIA Request and Request for Expedited Processing**

On September 30, 2004, plaintiff wrote to the FBI and requested under the FOIA agency records concerning the Terrorist Screening Database ("TSDB").  Exhibit 2 (attached to Hofmann Decl.).  Plaintiff stated that TSA had on September 24, 2004, published a System of Records notice in the Federal Register announcing the test phase of Secure Flight, which outlined the agency's plans for protecting the privacy of passengers affected by the program.  *Id*. at 2.  Plaintiff noted that the TSA announcement stated that Secure Flight will compare passenger information to names in the TSDB, which will include the expanded TSA watch lists.  *Id*.  Plaintiff also explained that the deadline for public comment on the test phase of Secure Flight was October 25, 2004.  *Id*.

Plaintiff requested expedited processing of its request, citing the applicable DOJ regulation, 28 CFR § 16.5(d)(1)(ii), which provides for expedited processing when there is an "urgency to inform the public about an actual or alleged federal government activity," and the request is made by "a person primarily engaged in disseminating information."  *Id*.  Plaintiff explained the urgency of disseminating information about the use of the TSDB within Secure Flight to the public:

> The FBI is responsible for maintaining the TSC and TSDB, and the agency's comparison of passenger data with information maintained in the TSDB raises serious questions about how the FBI will implement privacy safeguards and address the privacy concerns raised by its involvement in Secure Flight . . .
>
> Because public comments on the program must be submitted by October 25, there is a particular urgency for the public to obtain information about how this new passenger screening system will function, as well as how the TSDB will operate within the program.

*Id*.  In support of this assertion, Plaintiff quoted editorials from the Baltimore Sun and Atlanta Journal Constitution raising questions about the privacy implications of Secure

Flight and how the government will provide redress if the program wrongfully keeps individuals off airplanes.  *Id*. at 2.

Plaintiff also demonstrated the considerable news media attention the FBI's role in the Secure Flight program has drawn from the press.  Specifically, plaintiff referred to, and attached a copy of, the first page of search results from Google News concerning the FBI and its involvement in Secure Flight.[3]  *Id*. at 5.  The search results consisted of 213 articles from newspapers across the country.  *Id*.[4]

### C.  FBI's Initial Refusal to Recognize Plaintiff's Entitlement to Expedited Processing and Failure to Process Plaintiff's Request Within the Statutory Time Frame

By letter dated October 1, 2004, the FBI refused to grant plaintiff expedited processing of its FOIA request.  Exhibit 3 (attached to Hofmann Decl.).  Explaining its basis for denying plaintiff's request, the FBI wrote, "[b]ased on the information you have provided, [we] cannot find that there is a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activity generally."  *Id*.  The FBI also stated, "the primary activity of the

---

[3] Google News results include only articles published thirty days prior to a search.  For information about how Google News operates, see Google News, *Frequently Asked Questions*, http://news.google.com/intl/en_us/about_google_news.html (last visited Dec. 14, 2004).

[4] In support of its assertion that it is "primarily engaged in disseminating information" for expedited processing purposes, plaintiff addressed its news collection and dissemination activities.  Exhibit 2 at 3.  Plaintiff further supported its assertion by noting that

> the U.S. District Court for the District of Columbia has specifically held that EPIC is "primarily engaged in disseminating information" for the purposes of expedited processing, *American Civil Liberties Union v. Department of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004), and is a "representative of the news media" for fee waiver purposes*, Electronic Privacy Information Center v. Department of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003).

*Id*.

American Civil Liberties Union [sic] is not information dissemination, which is required for a requester to qualify for expedited processing under this standard." *Id.*

Plaintiff filed suit against defendant DOJ on October 12, 2004, alleging that the FBI wrongfully denied plaintiff's request for expedited processing, and moved for entry of a temporary restraining order and a preliminary injunction requiring the FBI to expedite the processing of plaintiff's FOIA request. *Electronic Privacy Information Center v. Dep't of Justice*, No. 04-1736-HHK (D.D.C.).  On October 13, 2004 — one day after plaintiff filed suit — the FBI belatedly agreed to process plaintiff's FOIA request in an expedited manner, stating that the request would "be assigned shortly" and the FBI would "begin to conducting [sic] a search for any potentially responsive records." Exhibit 4 (attached to Hofmann Decl.).

As a result of the FBI's reversal of its position, plaintiff withdrew its application for a temporary restraining order and motion for a preliminary injunction on October 14, 2004.  Defendant DOJ moved to dismiss the case on the same day.  Plaintiff opposed the motion, urging the Court to retain jurisdiction to ensure that defendant carried out its obligation to process plaintiff's request in an expedited manner.  However, the Court granted defendant's motion to dismiss on November 24, 2004.  Order, *Electronic Privacy Information Center v. Dep't of Justice*, No. 04-1736 (attached to Hofmann Decl. as Exhibit 5).  Notwithstanding the FBI's purported agreement to expedite the processing of plaintiff's FOIA request, to date, the FBI has not responded to plaintiff's FOIA request. Nor has the FBI provided any indication of when it intends to complete the processing of plaintiff's request, which has now been pending before the agency for two and a half months.

## ARGUMENT

The issues raised in this motion are simple and not subject to serious dispute.  In compliance with the FOIA and applicable DOJ regulations, plaintiff requested expedited processing of a request seeking information about how the FBI maintains information in the TSDB.  Plaintiff submitted specific and relevant information that clearly established its entitlement to expedited processing.  In clear contravention of the law, the FBI flouted statutory and regulatory requirements by denying plaintiff's request for expedited processing.  Although the FBI reversed its position rather than defend it before this Court, the agency has failed to comply with not only the FOIA's provisions for expedited processing, but also the FOIA's mandated time frame of twenty working days for responding to a standard, non-expedited request.  The agency's failure to respond to plaintiff's request constitutes a continuing impediment to plaintiff's legal right to examine how the FBI will maintain the privacy of personal information within or compared to information in the TSDB.  The agency's action is clearly unlawful and should be enjoined.

### I.   The Court has Jurisdiction to Grant the Requested Relief

The Court's jurisdiction to consider this matter and grant appropriate relief is clear.  The FOIA provides, in pertinent part:

> On complaint, the district court of the United States . . . in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.  In such a case the court shall determine the matter de novo . . . .

5 U.S.C. § 552(a)(4)(B).  *See Al-Fayed v. CIA*, 254 F.3d 300, 304 (D.C. Cir. 2001). The

statute further provides that

> [a]ny person making a request to any agency for records . . . shall be
> deemed to have exhausted his administrative remedies with respect to such
> request if the agency fails to comply with the applicable time limit
> provisions of this paragraph.

5 U.S.C. § 552(a)(6)(C).  *See Oglesby v. Dep't of the Army*, 920 F.2d 57, 62 (D.C. Cir.

1990) ("If the agency has not responded within the statutory time limits, then . . . the

requester may bring suit.").

Here, notwithstanding its agreement to "expedite" plaintiff's request, the FBI has

failed to respond within the generally applicable twenty-working-day time limit

established by 5 U.S.C. § 552(a)(6)(A).  Plaintiff's claim is thus ripe for adjudication, as

all applicable administrative remedies have been exhausted.

## II.  Plaintiff is Entitled to Entry of a Preliminary Injunction

In considering plaintiff's request for the entry of a preliminary injunction

compelling defendant DOJ to expeditiously complete the processing of plaintiff's FOIA

request, the court must assess "[t]he familiar factors affecting the grant of preliminary

injunctive relief — 1) likelihood of success on the merits, 2) irreparable injury to the

plaintiff, 3) burden on . . . others' interests, and 4) the public interest." *Jacksonville Port

Auth. v. Adams*, 556 F.2d 52, 57 (D.C. Cir. 1977) (citing *Virginia Petroleum Jobbers

Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958), and *A Quaker Action Group v. Hickel*,

421 F.2d 1111, 1116 (D.C. Cir. 1969)).  Consideration of these factors in this case firmly

establishes plaintiff's entitlement to injunctive relief.

---

[5] This Court also has jurisdiction of this case under 28 U.S.C. § 1331 ("The district courts
shall have original jurisdiction over all civil actions arising under the Constitution, laws,
or treaties of the United States.").

**A. Plaintiff is Likely to Prevail on the Merits**

Given the clarity of plaintiff's statutory entitlement to the expedited processing of its request, plaintiff's likelihood of prevailing on the merits is extremely high.  In assessing plaintiff's likelihood of success, the Court must consider the merits of one discrete issue: whether defendant has processed plaintiff's FOIA request in an expedited manner within the time line provided in the FOIA and DOJ regulations.  Plaintiff is likely to prevail on this issue.

According to the FOIA and DOJ regulations, the FBI is generally required to "determine within 20 days (except Saturdays, Sundays, and legal public holidays) after the receipt of  . . . [a] request whether to comply with such request and shall immediately notify the person making such request of such determination[.]"  5 U.S.C. § 552(a)(6)(A)(i); *see also* 28 CFR § 16.6(b).  If the FBI grants expedited treatment, the agency is obligated to process the request "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii); 28 CFR § 16.5(d)(4).

Here, the FBI determined that plaintiff's request was entitled to expedited processing only after plaintiff filed a motion for a temporary restraining order and preliminary injunction against the agency in prior litigation.  Exhibit 4.  The agency then immediately moved to dismiss the case, arguing that the Court had no jurisdiction to ensure that the FBI actually process the documents in an expedited manner.  Defendant argued that the FBI "had twenty working days excepting weekends and holidays *after receipt* of the request to respond [to plaintiff's request].  Thus the earliest time that plaintiff could invoke this Court's jurisdiction is October 29, 2004."  Def.'s Mot. Dismiss at 4, *Electronic Privacy Information Center v. Dep't of Justice*, No. 04-1736

(emphasis in original).  Now, two months after the FBI granted "expedited processing," and more than six weeks after the date defendant concedes plaintiff "could invoke this Court's jurisdiction," the FBI has failed to actually process plaintiff's request in an expedited — or any other — manner.

According to the DOJ's annual FOIA report for FY2003, the FBI's median time for processing expedited requests is 22 days.  Department of Justice, Freedom of Information Act Report for Fiscal Year 2003 (relevant portion attached to Hofmann Decl. as Exhibit 6).[6]  However, eleven weeks after EPIC submitted its request to the FBI, the DOJ has not only failed to process and release the documents, but also has refused to provide any indication of when such action might be taken.  E-mail from Peter Bryce, Department of Justice, to Marcia Hofmann, EPIC (Nov. 3, 2004) (attached to Hofmann Decl. as Exhibit 7).[7]

Although it is undisputed that plaintiff's request is entitled to expedited status, the agency has failed to comply with the time frame required by the FOIA and DOJ regulations for issuing a determination on a standard FOIA request.  Plaintiff is legally entitled to the immediate processing and release of the requested records.

---

[6] The complete annual report is available at http://www.usdoj.gov/oip/annual_report/2003/03contents.htm (last visited Dec. 14, 2004).

[7] In response to plaintiff's inquiry concerning an anticipated completion date for processing of its request, counsel for defendant stated, "your request has been granted expedited treatment and the FBI is doing everything in its power to process your request as quickly as possible."  *Id*.  It has now been more than a month since defendant provided that vague assurance, and plaintiff has received no indication that the completion of processing is imminent.

**B. Plaintiff Will Suffer Irreparable Injury in the Absence of the Requested
   Injunctive Relief**

Unless the FBI's unlawful failure to comply with its obligation to expedite the

processing of plaintiff's FOIA request is immediately enjoined, plaintiff will suffer

irreparable harm.[8]  The very nature of the right that plaintiff seeks to vindicate in this

action — expedited processing — depends upon timeliness.  The courts have recognized

that the requisite injury is present, and preliminary injunctive relief is appropriate, in

cases where "time is of the essence."  *See, e.g.*, *United States v. BNS, Inc.*, 858 F.2d 456,

465 (9th Cir. 1988); *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir.

1982).  Under the statutory scheme Congress established in the FOIA, it is clear that

"time is of the essence" here and that any further delay in the processing of plaintiff's

request will cause irreparable injury. Unless the FBI is ordered to process plaintiff's

request immediately, plaintiff's right to expedition under the FOIA will be irretrievably

lost.

In addition to the loss of its clearly established legal right, any further delay in the

processing of plaintiff's FOIA request will irreparably harm plaintiff's ability, and that of

the public, to obtain information vital to the current and ongoing debate surrounding the

---

[8] Given the strength of plaintiff's position on the merits, even "a relatively slight showing
of irreparable injury" is adequate to justify the issuance of a preliminary injunction.  As
the D.C. Circuit has held:

> [i]f the arguments for one factor are particularly strong, an injunction may
> issue even if the arguments in other areas are rather weak.  An injunction
> may be justified, for example, where there is a particularly strong
> likelihood of success on the merits even if there is a relatively slight
> showing of irreparable injury.

*CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir.
1995) (citation omitted).  Nonetheless, plaintiff's showing of harm here is substantial.

development of Secure Flight.  Hofmann Decl. ¶¶ 24-27.  As this Court has noted, a

private party (such as plaintiff) "suffers an injury-in-fact when . . . denied information

that must be disclosed pursuant to statute." *Walker v. Cheney*, 230 F. Supp. 2d 51, 66

n.10 (D.D.C. 2002) (citing *FEC v. Akins*, 524 U.S. 11, 21 (1998) and *Pub. Citizen v.*

*Dep't of Justice*, 491 U.S. 440, 449 (1989)).

      Because time is of the essence in this matter, plaintiff will be irreparably harmed

unless the Court acts now, "when it [is] still possible to grant effective relief," and before

"all opportunity to grant the requested relief [is] foreclosed*." Local Lodge No. 1266,*

*Int'l Ass'n of Machinists and Aerospace Workers v. Panoramic Corp.*, 668 F.2d 276, 290

(7th Cir. 1981).

      **C. <u>Injunctive Relief Will Not Burden Others' Interests</u>**

      Defendant DOJ cannot be said to be "burdened" by a requirement that it comply

with the law.  The immediate relief plaintiff seeks will require nothing more of the

government than what the law already mandates — the expedited processing of plaintiff's

FOIA request.  Nor will the requested relief burden the interests of other parties who have

submitted FOIA requests to the DOJ in any manner beyond that foreseen by Congress.  In

providing for expedited processing of qualifying requests, Congress intended that such

requests would take precedence over those that do not qualify for such treatment.

Fulfillment of the legislative intent cannot be characterized as a burden on any party's

interests.

D. __The Public Interest Favors the Requested Relief__

The final criterion for the issuance of a preliminary injunction is clearly satisfied in this case.  The D.C. Circuit has long recognized that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Authr.*, 556 F.2d at 59 (D.C. Cir. 1977).  Likewise, it is "axiomatic that an 'agency is required to follow its own regulations.'" *Edmonds v. FBI*, C.A. No. 02-1294, 2002 U.S. Dist. LEXIS 26578, at *9 n.3 (D.D.C. Dec. 3, 2002) (quoting *Cherokee National of Okla. v. Babbitt*, 117 F.3d 1489, 1499 (D.C. Cir. 1997)).  Such adherence is all that plaintiff seeks here.  The public interest will also be served by the expedited release of the requested records, which will further the FOIA's core purpose of "shedding light on an agency's performance of its statutory duties." *Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989).  As this Court has noted, "[t]here is public benefit in the release of information that adds to citizens' knowledge" of government activities. *Ctr. to Prevent Handgun Violence v. Dep't of the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999).  The public interest favors the issuance of an order directing defendant to immediately process and release the requested information.

III. __The Court Should Order the FBI to Process Plaintiff's FOIA Request Immediately__

While plaintiff recognizes that preliminary injunctive relief is not the norm in FOIA cases, plaintiff nonetheless submits that such relief is appropriate when, as in this case, an agency has paid lip service to, but failed to implement, a well-founded request for expedited processing.  Congress expressly required agencies to make determinations on requests for expedited processing within ten calendar days, 5 U.S.C. §

14

552(a)(6)(E)(ii)(I), and provided for immediate judicial review of adverse determinations, 5 U.S.C. § 552(a)(6)(E)(iii), demonstrating an intent that the courts should act quickly to vindicate the right to expedition.  The legislative mandate that disputes concerning expedited processing should be quickly resolved would be frustrated if aggrieved requesters were required to remain idle for twenty days after initiating suit before moving for partial summary judgment.  Fed. R. Civ. P. 56(a).  As such, claims involving entitlement to expedited processing are appropriately addressed through motions for preliminary relief.

In *Electronic Privacy Information Center v. Dep't of Justice*, C.A. No. 03-2078 (D.D.C. Oct. 20, 2003) (order denying preliminary injunction) (attached to Hofmann Decl. as Exhibit 8), Judge Robertson denied plaintiff's motion for a preliminary injunction, *sua sponte*, before the government had submitted a response.  Judge Robertson wrote that "[a]n injunction restraining the denial of a request . . . is a writ of mandamus" and that "[t]he showing offered by plaintiff in support of its motion does not address the quintessential element of mandamus, that the official act demanded by the movant be nondiscretionary."

Plaintiff respectfully submits that the Court's conclusion was in error.  Although the Court cited no authority in its brief order, the proposition that requests for mandatory injunctions are generally judged by the same principles as requests for mandamus derives from cases that are inapposite here.  *See, e.g., Swan v. Clinton*, 100 F.3d 973, 976 n.1 (D.C. Cir. 1996) ("a request for an injunction *based on the general federal question statute* is essentially a request for a writ of mandamus") (emphasis added).  The FOIA expressly provides for grants of injunctive relief, 5 U.S.C. § 552(a)(4)(B), and the D.C.

Circuit has held that agency denials of requests to expedite are subject to *de novo* review. *Al-Fayed*, 254 F.3d at 308.  Indeed, the court of appeals in *Al-Fayed* applied a preliminary injunction standard and never suggested that a mandamus standard should apply to claims like the one plaintiff raises here.

Likewise, the appropriate form of relief is clear.  The applicable DOJ regulations dictate the manner in which FOIA requests requiring expedition must be processed.  The regulations provide that DOJ components "ordinarily shall respond to requests according to their order of receipt," 28 C.F.R. § 16.5(a), but that requests "will be taken out of order and given expedited treatment whenever it is determined that they [meet the criteria for expedited processing]."  *Id*. § 16.5(d)(1).  "If a request for expedited treatment is granted, the request shall be given priority and shall be processed as soon as practicable."  *Id*. § 16.5(d)(4).  The Court should direct defendant DOJ to take whatever steps are necessary to complete the processing of plaintiff's request within 30 days of the issuance of the order plaintiff seeks.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for a preliminary injunction should be granted.

Respectfully submitted,

_____

MARCIA HOFMANN
D.C. Bar No. 484136

DAVID L. SOBEL
D.C. Bar No. 360418

MARC ROTENBERG
D.C. Bar No. 422825

ELECTRONIC PRIVACY INFORMATION
    CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, DC 20009
(202) 483-1140

Counsel for Plaintiff